UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TARIQ AHMAD,

Plaintiff,

v.

JIM FULKERSON,

Defendant.

Case No. 3:20-cv-00717-MMD-CLB

ORDER

## I. SUMMARY

*Pro se* Plaintiff Tariq Ahmad filed a first amended complaint alleging that Defendant Jim Fulkerson conspired and committed fraud, and Fulkerson committed commercial bribery. (ECF No. 22 ("FAC").)[1] Before the Court is the Report and Recommendation of United States Magistrate Judge Carla L. Baldwin. (ECF No. 70 ("R&R").) The R&R recommends granting Fulkerson's motion to dismiss (ECF No. 31), denying Ahmad's motion to amend (ECF No. 39), and denying all pending motions (ECF Nos. 46, 48, 50, 54, 64, 66) as moot. Ahmad timely filed an objection to the R&R (ECF Nos. 71, 71-1 ("Objection")),[2] and Fulkerson filed a response (ECF No. 73). Because the Court arrives at the same conclusion as Judge Baldwin that it lacks personal jurisdiction over Fulkerson—as further explained below—the Court overrules Ahmad's Objection and adopts the R&R as discussed herein.

## II. BACKGROUND

The Court incorporates by reference Judge Baldwin's recitation of the factual background provided in the R&R, which the Court adopts here. (ECF No. 70 at 1-2.)

---

[1]The FAC also names Pacific Energy & Mining, Co., Graco Fishing & Rental Tools Inc., and Rod Anderson as defendants. These defendants were dismissed on May 12, 2021. (ECF No. 37.)

[2]The Court finds it difficult at times to follow Ahmad's arguments in his Objection. As such, Ahmad's arguments require the Court to construe them as stated in this order.

Further relevant to this order, Fulkerson filed a motion to dismiss the FAC on May 7, 2021.[3] (ECF No. 31.) Thereafter, Ahmad filed a motion to amend (ECF No. 39) his FAC and attached a proposed second amended complaint (ECF No. 39-2 ("SAC")).

**A. First Amended Complaint**

In the FAC, Ahmad states that he resides in Reno, Nevada, and is president of Pacific Energy & Mining, Co. ("Pacific"), a Nevada corporation. (ECF No. 22 at 1-2.) He further states that Fulkerson is a Utah resident and was an employee and agent of Graco Fishing & Rental Tools, Inc. ("Graco"), a Texas corporation.[4] (*Id*.)

Ahmad alleges that Fulkerson contacted him while he was residing in Nevada. (*Id*. at 3.) Fulkerson submitted a fixed-price bid to Pacific, and Graco was then contracted to perform work on the Greentown Federal 26-43H natural gas well (the "Well"). (*Id*. at 2.) The Well was located in Grand County, Utah, but was operated by Pacific. (*Id*. at 2-3.) Ahmad further alleges that Graco provided invoices and documents to Ahmad in Nevada. (*Id.* at 3.)

According to Ahmad, Graco caused a breach of the Well. (*Id.*) Thereafter, a case was filed in a Utah state court. (*Id*.) At some point, Fulkerson provided false testimony regarding his employment and the factual basis of the breach and the fixed-price bid. (*Id*.) The case resulted in a judgment against Pacific and Ahmad. (*Id*.) Ahmad claims that Fulkerson conspired and committed fraud by changing the factual basis regarding the breach in the Well and the fixed-price bid after receiving a monetary benefit from Graco. (*Id*. at 4-5.) Additionally, Fulkerson committed commercial bribery when he received a

[3]Ahmad did not file a response to Fulkerson's motion to dismiss. This can be fatal pursuant to LR 7-2(d). However, in light of Ahmad's *pro se* status and his Objection, the Court will explain in this order why it does not have personal jurisdiction over this action.

[4]The Court notes that Ahmad states in the FAC that Graco is a "Texas Corporation" and states in his proposed second amended complaint that Graco is a "Texas corporation which has operated in the States of California, Nevada, Utah, Texas among other states." (ECF Nos. 22 at 1, 39-2 at 3.) Because this order pertains to jurisdiction, the citizenship of a corporation is based on its place of incorporation and principal place of business. Neither complaint provide clarity on this issue. This is further complicated by the fact that Graco was dismissed from the FAC, *see supra* footnote 1, and not a named party in the proposed second amended complaint, but Ahmad nevertheless appears to allege claims against Graco, *see infra* footnote 5.

bribe from Graco to change the facts on the fixed-bid contract and the cause of the breach. (*Id*. at 5-6.) As a result, Ahmad suffered damages. (*Id*. at 4-6.)

**B. Second Amended Complaint**

In the SAC, Ahmad names Keith Masters ("Masters") and Masters Consulting LLC ("MC") as defendants, in addition to Fulkerson.[5] (ECF No. 39-2 at 1-2.) Masters is a Texas resident and MC is a Texas corporation. (*Id*.) Ahmad asserts that "Defendants purposefully availed themselves of the jurisdiction of this [C]ourt by contacting [Ahmad] in Reno, Nevada in order to receive contracts for work." (*Id*. at 9.) Ahmad alleges that he first interacted with Fulkerson in 2003, and this continued through to 2016, as "Graco and Fulkerson were in contact with and provided services to Ahmad in Reno, Nevada." (*Id*. at 4.) In 2015, Fulkerson informed Ahmad that "Graco was an expert in removing of liners" and had experience doing so. (*Id*. at 5.) Based on this representation, Ahmad approved Graco to do work on the Well. (*Id*.) According to Ahmad, Graco's tools breached the casing of the Well around February 2016. (*Id*. at 6.) As a result of the breach, Graco hired Masters and MC "to conduct an analysis of cause of breach in the Well, remaining reserves, [and] operations during the removal of a liner." (*Id*. at 3.)

In 2016, Pacific filed a lawsuit against Graco for negligence in a Utah state court. (*Id*. at 6.) Fulkerson provided testimony during trial, but Fulkerson's discovery response contradicted his testimony. (*Id*. at 6-7.) Ahmad claims that Fulkerson and Graco conspired and committed fraud because they misrepresented to Ahmad their training, capacities, and expertise, which led to the breach of the Well. (*Id*. at 9-11.) Ahmad further claims that Fulkerson, Masters, and MC committed commercial bribery because these defendants had a fiduciary duty to Ahmad but breached such duty by accepting payments to change

---

[5]Ahmad appears to allege claims against Graco as a defendant in the SAC but does not explicitly list Graco as a party to this action. (ECF No. 39-2 at 1-2.) This appears to contradict his request to dismiss Graco in the FAC. (ECF No. 37.) Nevertheless, the Court construes the SAC as bringing fraud claims against Graco as the allegations therein suggest as much. (ECF No. 39-2 at 10 (*i.e.*, "Fulkerson, his employer, Graco and others conspired in order to receive the contract for removal of the Liner from the Well.").)

their testimony and providing misleading testimony. (*Id*. at 11-13.) As a result, Ahmad suffered damages in excess of $2,000,000. (*Id*. 9-13.)

## III. LEGAL STANDARD

### A. Review of the Magistrate Judge's Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* The Court's review is thus *de novo* because Ahmad filed his Objection (ECF No. 71-1).

### B. Personal Jurisdiction

A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1404 (9th Cir. 1994). Since "Nevada's long-arm statute, NRS § 14.065 reaches the limits of due process set by the United States Constitution," the Court moves on to the second part of the analysis. *Baker v. Eighth Judicial Dist. Ct. ex rel. Cnty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal due process." *Chan*, 39 F.3d at 1404-05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id*. (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction.

## IV. DISCUSSION

Following a *de novo* review of the R&R and other records in this case, the Court finds good cause to accept and adopt Judge Baldwin's R&R as stated herein.

Judge Baldwin recommends Fulkerson's motion to dismiss be granted as the Court lacks personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure

because Ahmad does not establish either general or specific jurisdiction over Fulkerson. (ECF No. 70 at 4-5.) Ahmad makes three objections: (1) specific jurisdiction exists because Fulkerson contacted Ahmad in Nevada; (2) Ahmad—as a *pro se* plaintiff—was not afforded notice and opportunity to cure deficiencies in his complaint; and (3) Fulkerson's motion to dismiss was rendered moot when Ahmad filed his motion to amend. (ECF No. 71-1 at 3-12.) The Court disagrees with Ahmad. Because the Court finds there is no personal jurisdiction, it will address Ahmad's specific jurisdiction argument only as it proves to be dispositive and declines to address the remaining arguments as those are ultimately immaterial.

In his Objection, Ahmad does not contest that the Court lacks general jurisdiction over Fulkerson, but instead asserts that the Court may exercise specific jurisdiction. (*Id*. at 4-10.) To support his assertion, Ahmad argues he has established the first two-prongs of the three-prong test for specific jurisdiction as set forth by the Ninth Circuit in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). (ECF No. 71-1 at 4-7.)[6] The Court will first state the legal standard for specific jurisdiction and then address the corresponding arguments, and will conclude by granting Defendants motion to dismiss.

**A. Specific Jurisdiction**

In examining whether specific jurisdiction exists, the minimum contacts inquiry is "defendant focused"—the relationship to be examined is that between the defendant and the forum state, and that relationship must arise out of the defendant's own contacts "with the forum state itself, not . . . with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014). Specifically, a court may exercise specific jurisdiction over a defendant only where "the defendant's suit-related conduct" created a substantial connection with the forum [s]tate." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015,

[6]Ahmad additionally argues that fair play and substantial justice requires the Court to exercise specific jurisdiction. (ECF No. 71-1 at 7-10.) Because the Court finds Ahmad is unable to establish the second prong as further discussed below, the Court need not address this argument as it does not change the outcome of this order.

1022-23 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284-85). Put another way, "there must be 'an affiliation between the forum and the underlying controversy, principally, [a]n activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021) (explaining that more is required to exercise specific jurisdiction over a defendant over which the court lacks general jurisdiction than simply reaching out beyond its home). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

Incorporating these overarching considerations, the Ninth Circuit Court of Appeals provides a three-prong test for analyzing an assertion of specific personal jurisdiction. First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id*. In the Ninth Circuit, "purposeful availment" and "purposeful direction" call for distinct analyses. *See id*. Typically, contract claims follow the purposeful availment analysis and tort claims follow the purposeful direction analysis. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101 (9th Cir. 2020). Third, if the plaintiff satisfies its burden of establishing the first two prongs, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource*, *Inc.*, 653 F.3d at 1076 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

///

**B. First Prong – Purposeful Direction**

Ahmad argues the first prong is met because Fulkerson expressly aimed activities at Nevada by contacting Ahmad from 2003 to 2016, when Fulkerson first solicited a business opportunity with Pacific and was later awarded work contracts. (ECF No. 71-1 at 4-6.) Ahmad further argues that Fulkerson knew Ahmad was a Nevada resident, that transaction between the parties were "consummated" in Nevada, and that Fulkerson knew Ahmad would be harmed in Nevada. (*Id*. at 4-7.) Fulkerson counters that Ahmad admitted in the SAC that Fulkerson was an agent of Graco.[7] (ECF No. 73 at 5.) Thus, it was Graco not Fulkerson who "directed commercial efforts" at Ahmad. (*Id*.) Fulkerson also counters that the alleged harm in the FAC occurred in Utah. (*Id*. at 6.) As explained below, it is not decisively clear to the Court whether the first prong is met.

Ahmad's claims for fraud and commercial bribery are claims which sound in tort, so the Court applies a purposeful direction analysis. As noted, the first prong for establishing specific jurisdiction concerns whether Fulkerson's actions outside the forum state were purposefully directed at the forum state. *See Burger King*, 471 U.S. at 476. "Where allegedly tortious conduct takes place *outside* the forum and has effects inside the forum, our circuit has examined purposeful direction using an 'effects test' based on *Calder v. Jones*." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). Courts consider whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1209 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)).

There is no genuine dispute that Fulkerson acted intentionally. But when the Court turns to the remaining two considerations of the "effects test" based on *Calder v. Jones*, 465 U.S. 783 (1984), it is unsettled whether Fulkerson's actions were directed at Nevada. Here, Ahmad alleges in the FAC that Fulkerson submitted a fixed-price bid to Pacific by

---

[7]Because the FAC is the operative complaint, the Court declines to look to the SAC in its analysis of whether Ahmad has properly alleged in the FAC specific jurisdiction over Fulkerson.

telephone and email, and that Fulkerson contacted Ahmad in Nevada. (ECF No. 22 at 2-3.) Fulkerson remained in communication with Ahmad and invoices were provided to Ahmad in Nevada. (*Id*. at 3.) As a result of Fulkerson's actions, Ahmad alleges that he suffered damages. (*Id*. at 4-6.) While there is a reasonable inference that Fulkerson knew Ahmad was a Nevada resident and harm would occur in Nevada, thus suggesting that Fulkerson expressly aimed his activities at the forum state, it remains arguable that Fulkerson's conduct "connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Even if the Court assumes Ahmad has made a *prima facie* showing that the first prong is met—as further discussed below—he fails to show that the second prong is met to justify exercising specific jurisdiction over Fulkerson. *See CollegeSource, Inc.*, 653 F.3d at 1076 (stating that a plaintiff "bears the burden of satisfying the first two prongs.").

**C. Second Prong – Claim Relates to Forum-Related Activities**

Ahmad argues the second prong is met because his claims arise out of Fulkerson's activities in soliciting business and subsequently getting paid for business from Nevada. (No. 71-1 at 6.) In support, Ahmad cites to Federal Circuit caselaw *3D Sys. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998), and references 35 U.S.C. § 271(a). (*Id*. at 6-7.) Fulkerson counters that § 271(a) is not applicable as the statute pertains to patent infringement. (ECF No. 73 at 5-6.) The Court agrees with Fulkerson. Moreover, the Court is unconvinced by Ahmad's argument that the second prong is met.

In *3D Sys.*, the Federal Circuit held that a district court had personal jurisdiction over a defendant because the plaintiff's claim—patent infringement—arose out of the defendant's action of sending price-quotation letters to residents in the forum state. *See* 160 F.3d at 1379. In reaching its decision, the court found the second prong of the specific jurisdiction test, as articulated in *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995), was met because the letters could be regarded as "offers to sell" pursuant to 35 U.S.C. § 271. *Id.* at 1379. However, Ahmad's reliance on *3D Sys*. is misplaced as he is not asserting a patent infringement claim, nor is Federal Circuit caselaw controlling or probative in this instance.

As discussed above, the second prong requires Ahmad's fraud and bribery claims to arise out of, or relate to, Fulkerson's forum-related activities. *See supra* at p. 6. Although Ahmad alleges in the FAC that Fulkerson contacted him in Nevada and they entered a business relationship, the heart of Ahmad's claims arise out of events in Utah. Here, Fulkerson supervised the work being performed on the Well in Utah. (ECF No. 22 at 3.) He held this position when the Well was breached. (*Id*.) The breach resulted in a lawsuit being filed in a Utah state court, where Fulkerson provided testimony and a judgment was entered against Ahmad. (*Id*.) Ahmad's fraud and bribery claims pertain to allegations that Fulkerson lied and changed the factual basis of the breach and the fixed-price bid for a monetary benefit when he provided his testimony in the Utah case. As such, Ahmad has not met his burden of showing the second prong is met as his claims do not arise out of Fulkerson's forum-related activities in Nevada. Accordingly, the Court lacks specific jurisdiction over Fulkerson.

While the FAC remains the operative complaint, the Court has reviewed the SAC and has determined that it does not change the Court's finding that it lacks personal jurisdiction. In the manner that the SAC is written, it appears to the Court that Ahmad is shifting the focus of his fraud and bribery claims to arise out of Fulkerson's contacts with Nevada. Ahmad has failed to meet his burden as it remains unclear that Nevada should be the forum state. For example, Ahmad alleges the following. "Throughout the period of 2003 and continuing thru 2015[,] Graco and Fulkerson were in contact with and provided services to Ahmad in Reno, Nevada." (ECF No. 39-2 at 4.) This allegation suggests that the services provided by Graco and Fulkerson took place in the forum state. However, this is misleading, in part, because of a perplexing footnote accompanying the allegation. (*See id*. at n.2.) The footnote lists several oil fields without indication of their location being in Nevada,[8] thus falsely suggesting Graco and Fulkerson provided their services in Nevada.

---

[8]The footnote states, "Brennan Bottoms Oil Field, Grassy Trails Oil Fields, Greentown Oil Field, Tin Cup Oil Field and Squaw Canyon Oil Field." (ECF No. 39-2 at 4, n.2.) While the Court does not rely on information outside the pleadings, the Court notes that an online search of these oil fields indicate that they are located in Utah.

Moreover, while Ahmed alleges in the SAC—as he did in the FAC—that Fulkerson lied and changed his testimony in the Utah case, his claims of fraud and bribery do not arise here out of Fulkerson's testimony. Rather, the claims appear to arise now from Fulkerson and Graco conspiring to receive a work contract, their misrepresentation of their training and expertise, and Fulkerson, Masters, and MC failing to disclose that they received payments from Graco. (*Id*. 9-13.) These allegations shift the focus of the claims from Fulkerson's testimony in the Utah case to the overall nature of the business relationship between the parties. Therefore, it is indeterminate if the claims arise out of Fulkerson and Graco's dealings with Ahmad in Nevada, or alternatively out of Fulkerson's activities and testimony in Utah. The Court finds that Ahmad alleges no facts to show specific jurisdiction over Masters and MC, and has not met his burden of showing that jurisdiction exists over Fulkerson and Graco based on allegations in the SAC. As such, the Court will grant Fulkerson's motion to dismiss and deny Ahmad's motion to amend.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that the Report and Recommendation of Magistrate Judge Carla L. Baldwin (ECF No. 70) is accepted and adopted as discussed herein.

It is further ordered that Defendant Jim Fulkerson's motion to dismiss (ECF No. 31) is granted. Dismissal is for lack of personal jurisdiction.

It is further ordered that all pending motions (ECF Nos. 39, 46, 48, 50, 54, 64, 66) are denied as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 10th Day of November 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE